# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------

M.E. and T.E. individually,
and on behalf of Kassidy E., a minor,

    Plaintiffs,

   -against-

THE NEW YORK CITY DEPARTMENT
  OF EDUCATION,

    Defendant.

-------------------------------------

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

ECF

Case No.: 15 CIV 5306

Hon. Vernon S. Broderick

LAWRENCE D. WEINBERG (LW7841)
Attorney for Plaintiffs

162 Williamson Ave.
Bloomfield, NJ 07003
973-748-3761
Fax: 718-228-5935

c/o Susan Luger Associates, Inc.
Special Education Advocates
155 West 72nd Street
Suite 201
New York, NY 10023
212-769-4644
Fax: 212-501-8090

lawrenceweinberg@gmail.com

## <u>TABLE OF CONTENTS</u>

Table of Contents                                                                                                          i

Table of Authorities                                                                                                      ii

Abbreviations                                                                                                              v

Overview                                                                                                                   1

Factual and Procedural Summary                                                                            1

Statutory Framework                                                                                                3

Burden of Proof                                                                                                            4

Standard of Review                                                                                                       4

Legal Argument                                                                                                             7

Defendant Failed to Provide the Child with a Free Appropriate Public Education          7

   A The Evidence Objectively Demonstrated that the IEP Could Not Meet Kassidy's Sensory Needs................................................................................................................ 8

   B. The Department Failed to Demonstrate the Proposed Placement Could Meet Kassidy's Sensory Needs as Stated on his IEP........................................................................... 14

Conclusion                                                                                                                 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.C. & M.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165 (2d Cir. 2009) ......................................... 5

*A.E. ex rel. Mr. & Mrs. E. v. Westport Bd. of Educ.*, 251 Fed.Appx. 685 (2d Cir. 2007) ............. 7

*B.P. v. N.Y. City Dep't of Educ.*, 2015 U.S. App. LEXIS 22892 (2d Cir. N.Y. Dec. 30, 2015)... 13

*B.R. v. N.Y. City Dep't of Educ.*, 910 F. Supp. 2d 670 (S.D.N.Y. Dec. 26, 2012) ...................... 15

*Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982) ................................................................. 3, 4, 7, 13

*C.B. ex rel. W.B. v. N.Y. City Dep't of Educ.,* 2005 U.S. Dist. LEXIS 15215 (E.D.N.Y. June 10,

   2005) ................................................................................................................................... 5

*Cabouli v. Chappaqua Cent. Sch. Dist.*, 202 Fed.Appx. 519 (2nd Cir. 2006).............................. 8

*Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186 (2d Cir. 2005)............................................... 4, 7

*D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503 (2d Cir. 2006), amended, 480 F.3d

   138 (2007)............................................................................................................................ 8

*D.F. ex rel. N.F. v. Ramapo Cent. Sch. Dist.*, 430 F.3d 595 (2d Cir. 2005) .................................. 7

*D.N. and J.V.N. v. Board of Education of Center Moriches Union Free School District*, 2015

   U.S. Dist. LEXIS 138272, 25 (September 28, 2015)................................................................. 12

*E.S. v. Katonah-Lewisboro Sch. Dist.*, 742 F. Supp. 2d 417 (S.D.N.Y. Sept. 30, 2010)............... 6

*Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993) ...................................................... 3

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 129 S.Ct. 2484 (2009) ......................................... 4

*Frank G. v. Bd. of Educ.*, 459 F.3d 356 (2d Cir. 2006), *cert. denied*, 552 U.S. 985 (2007).......... 7

*Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105 (2d Cir. 2007)........................................... 4

*Hall v. Vance County Bd. of Educ.,* 774 F.2d 629 (4th Cir. 1985) ................................................. 7

*Lillbask v. State of Conn. Dep't of Educ.*, 397 F.3d 77 (2d Cir. 2005).......................................... 6

*M.H. v. N.Y. City Dep't of Educ.*, 712 F. Supp. 2d 125 (S.D.N.Y. 2010), *aff'd, M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217 (2d Cir. N.Y. 2012) ................................................................ 6

*M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217 (2d Cir. N.Y. 2012) ............................................ 5

*M.O. v. N.Y. City Dep't of Educ.*, 793 F.3d 236 (2d Cir. 2015). ................................................... 15

*M.O. v. N.Y. City Dep't of Educ.*, 793 F.3d 236 (2d Cir. N.Y. 2015) ........................................... 14

*M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers*, 231 F.3d 96, 102 (2d Cir. 2000), cert. denied, 532 U.S. 942 (2001) ........................................................................ 4

*M.V. v. Shenendehowa Cent. Sch. Dist.*, 2008 U.S. Dist. LEXIS 182 (N.D.N.Y Jan. 2, 2008) ..... 6

*Mrs. B. v. Milford Board of Ed.,* 103 F.3d 1114 (2d Cir. 1997) .................................................. 6, 7

*Polk v. Cent. Susquehanna Intermediate Unit 16,* 853 F.2d 171 (3d Cir. 1988) .......................... 7

*Sch. Comm. of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985) ..................... 3

*Schaffer v. Weast*, 546 U.S. 49 (2005) ....................................................................................... 4

*Schreiber v. E. Ramapo Cent. Sch. Dist.*, 700 F. Supp. 2d 529 (S.D.N.Y March 31, 2010) .... 5, 13

*Still v. DeBuono*, 101 F.3d 888 (2d Cir. 1996) ............................................................................ 3

*Town of Burlington v. Dep't of Educ. of Mass.,* 736 F.2d 773 (1st Cir. 1984), *aff'd,* 471 U.S. 359 (1985) ....................................................................................................................................... 5

*Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119 (2d Cir. 1998) .................................... 4, 7, 8

*Weixel v. Bd. of Educ.*, 287 F.3d 138 (2d Cir. 2002) .................................................................... 7

*Wolfe v. Taconic-Hills Cent. Sch. Dist.*, 167 F. Supp. 2d 530 (N.D.N.Y 2001) ............................ 6

**Statutes and Regulations**

20 U.S.C. § 1400 ..................................................................................................................... 3, 7

20 U.S.C. § 1401 ........................................................................................................................ 3

20 U.S.C. § 1412 ..................................................................................................................... 3, 7

20 U.S.C. § 1415 ................................................................................................................. 4

NY Educ. Law § 4404 ........................................................................................................ 4

## ABBREVIATIONS

BIP ..................................................................................... Behavior Intervention Plan

CSE ...................................................................................... Committee on Special Education

DOE ........................................................... Defendant, New York City Department of Education

DPC .......................................................................................... Due Process Complaint

Ex. ...................................................................................... Impartial Hearing Exhibit

   Def. Ex. ................................... Defendant's Impartial Hearing Exhibit (Numbers 1 through __)

   Pl. Ex............................................ Plaintiff's Impartial Hearing Exhibit (Letters A through __)

FAPE ................................................................. Free Appropriate Public Education

FBA ...................................................................................... Functional Behavior Assessment

FNR ......................................................................................... Final Notice of Recommendation

IDEA .......... Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1401, et seq.

IEP .......................................................................... . Individualized Education Program

IHO ...................................................................................... Impartial Hearing Officer

OT ............................................................................................ Occupational Therapy

SRO ....................................................................................... State Review Officer

Tr. ........................................................................................ Transcript of the Impartial Hearing

**OVERVIEW**

Plaintiffs, M.E. and T.E., individually and on behalf of their learning-disabled child, Kassidy E., in support of their Cross-Motion for Summary Judgment, by way of their attorney, say as follows. This is IDEA case, where parents seek reimbursement and direct tuition payment for their unilateral placement at the Rebecca School, a private school for children with developmental delays. Kassidy E. is a child with Autism and Sensory Integration Disorder. Kassidy's sensory disorder affects his sense of touch, taste, hearing, and perception. Due to his disability Kassidy has difficulties interacting with the environment around him and requires a sensory diet, which is a special program of sensory input that enables him to remain calm and regulated and able to learn.

After an impartial hearing an IHO and SRO found that Kassidy's IEP was able to meet his sensory needs. They also found that questions of whether the proposed school location could implement Kassidy's sensory diet and meet his needs were speculative. Plaintiffs maintain that the IEP did not specify Kassidy's sensory diet enough to meet his needs. Plaintiffs also maintain that the proposed school location, P010X @ P304X could not meet Kassidy's sensory needs as stated on the IEP. Plaintiffs ask the Court to overturn the decision by the SRO and remand to the IHO for a determination whether the Rebecca School is appropriate and equities support reimbursement and direct tuition payment.

**FACTUAL AND PROCEDURAL SUMMARY**

Kassidy E. is diagnosed with Autistic Spectrum Disorder, Expressive Language Disorder, Sensory Integration Disorder, motor deficits, and difficulties with attention; he is classified as having Autism. Pl. Ex. F; Def. Ex. 1. Before beginning at the Rebecca School, Kassidy had

1

regular tantrums due to his sensory issues not being addressed. Tr. 271. A September 2011

evaluation by the McCarton Center recommended, "an intense sensory integration program to

address his sensory disorder. Kassidy has a global sensory disorder affecting his sense of touch,

taste, hearing, and perception." Pl. Ex. F, p. 7.

Kassidy began attending the Rebecca School in September 2011. Tr. 336. In December

2011, the Rebecca School prepared an Interdisciplinary Report of Progress for Kassidy. Def. Ex.

6. On April 18, 2012, pursuant to the IDEA, a CSE met and generated an IEP for the child (the

"April 18, 2012 IEP") for the 2012-2013 school year. Def. Ex. 1. The CSE used the December

2011 Rebecca School report to prepare the April 18, 2012 IEP. Tr. 158; see Def. Ex. 5; see

generally Def. Ex. 6.

On June 6, 2012, defendant sent plaintiffs an FNR informing them of the proposed school

placement at P010X @ P304X, where the April 18, 2012 IEP would be implemented. Def. Ex. 7.

Parents visited P010X @ P304X on Friday, June 25, 2012. Def. Ex. 9. While on the visit, parents

asked about the school's ability to implement a sensory diet and were told that the lunchroom

was downstairs. Tr. 293. The school was unable to answer other questions about its ability to

implement Kassidy's sensory diet. This indicated to the parents that the school could not meet

Kassidy's sensory needs. On June 25, 2012, parents notified the CSE by letter that the child

would remain at the Rebecca School for the 2012-2013 school year. *Id.* On May 20, 2013,

parents initiated an administrative due process proceeding against the defendant seeking direct

tuition payments for the Rebecca School for the 2012-2013 school year. Pl. Ex. A.

Evidentiary hearings were held on June 27, 2013, July 23, 2013, September 30, 2013,

October 2, 2013, October 7, 2013, November 18, 2013, December 20, 2013, March 7, 2014, and

March 14, 2014. The IHO rendered an initial decision on April 28, 2014. The initial decision

found the IEP was appropriate. Impartial Hearing Officer's Findings of Fact and Decision, dated April 28, 2014 ("IHO Decision").

On June 2, 2014, plaintiffs appealed to New York State's second administrative review tier, the SRO of the New York State Education Department. Verified Petition. The SRO's decision was issued on April 22, 2015. Decision of the State Review Officer, Application of a Child with a Learning Disability, No. 14-078, dated April 22, 2015 ("SRO Decision"). The SRO found that the IEP was appropriate and found issues related to implementation speculative and failed to address them. Plaintiffs appealed to this court on July 9, 2015.

## **STATUTORY FRAMEWORK**

The IDEA is designed to ensure that all children with disabilities are provided with a free appropriate public education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A); *see* 20 U.S.C. § 1412(a)(1)(A). Pursuant to the IDEA, a school district must provide each disabled child with "special education and related services," 20 U.S.C. § 1401(9), that are "reasonably calculated to enable the child to receive educational benefits," *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982).

When a school district fails to provide a disabled child with a FAPE, it is well established that parents who unilaterally place their special needs child in a private school may be reimbursed for tuition if three requirements are met. (1) the district-provided services made available pursuant to an Individualized Education Program (IEP) are inadequate; (2) the private education services obtained by the parent are appropriate; and (3) equitable considerations favor repayment. *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369-374 (1985); *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir. 1996). When the three *Burlington* prongs are satisfied, parents who have unilaterally placed their child in a private school may obtain

3

reimbursement for the cost of the private school tuition even when the school chosen by the parent does not meet the definition of a free appropriate public education. *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 13 (1993). This remedy is also available to parents regardless of whether the child previously received special-education services through the public school. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 129 S. Ct. 2484 (2009).

## BURDEN OF PROOF

In a *Burlington / Carter*, IDEA case in New York State, the school district has the burden of proof that it provided the child with a free and appropriate public education and that equitable factors do not favor repayment. NY Educ. Law § 4404(1)(c).[1] Parents have the burden of proof that the chosen school is appropriate. *Id.*; *Schaffer v. Weast*, 546 U.S. 49 (2005).

## STANDARD OF REVIEW

In an IDEA case, the district court must engage in a *de novo* review of the administrative record and make a determination based on the "preponderance of the evidence." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007); *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191 (2d Cir. 2005). The court should base its decision on a review of the administrative record and, at a party's request, any additional evidence presented. 20 U.S.C. § 1415(i)(2)(C); *M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers*, 231 F.3d 96, 102 (2d Cir. 2000), *cert. denied*, 532 U.S. 942 (2001).

This Court applies a "due weight" standard to the fact-findings and determinations of educational policy of the hearing officer. *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119,

---

[1] The board of education or trustees of the school district or the state agency responsible for providing education to students with disabilities shall have the burden of proof, including the burden of persuasion and burden of production, in any such impartial hearing, except that a parent or person in parental relation seeking tuition reimbursement for a unilateral parental placement shall have the burden of persuasion and burden of production on the appropriateness of such placement. NY Educ. Law § 4404(1)(c).

4

129 (2d Cir. 1998). However, this court is no "rubber stamp" for the administrative findings. *Rowley,* 458 U.S. at 207. The court may reject factual findings that are not supported by the administrative record or that are contradicted by the record. *Schreiber v. E. Ramapo Cent. Sch. Dist.*, 700 F. Supp. 2d 529, 547 (S.D.N.Y. 2010); *C.B. ex rel. W.B. v. N.Y. City Dep't of Educ.,* 2005 U.S. Dist. LEXIS 15215, at *13 (E.D.N.Y. June 10, 2005). After careful consideration of the hearing officer's findings on each material issue, "the court is free to accept or reject the findings in part or in whole." *Town of Burlington v. Dep't of Educ. of Mass.,* 736 F.2d 773, 792 (1st Cir. 1984), *aff'd on other grounds,* 471 U.S. 359 (1985). The amount of deference accorded to the opinion of the SRO depends on the issue decided.

> [D]eterminations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures. *See Cerra*, 427 F.3d at 195. Decisions involving a dispute over an appropriate educational methodology should be afforded more deference than determinations concerning whether there have been objective indications of progress. *Compare Grim*, 346 F.3d at 382-83, *with Walczak*, 142 F.3d at 130. Determinations grounded in thorough and logical reasoning should be provided more deference than decisions that are not. *See id.* at 129. And the district court should afford more deference when its review is based entirely on the same evidence as that before the SRO than when the district court has before it additional evidence that was not considered by the state agency.

*M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. N.Y. 2012) (citations in original).

In a two-tier system, such as New York, in cases where "the [State Review Officer's] decision conflicts with the earlier decision of the [Impartial Hearing Officer], the IHO's decision may be afforded diminished weight." *A.C. & M.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009) (quoting *Gagliardo*, 489 F.3d at 113, n. 2.) When the court concludes that the SRO's determinations are insufficiently reasoned to merit that deference, and in particular where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely

appropriate for the court to give deference to the IHO's analysis. *M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir. N.Y. 2012).

District courts have reversed the SRO where the SRO's decision "failed to take into account important information." *See, e.g.*, *E.S. v. Katonah-Lewisboro Sch. Dist.*, 742 F. Supp. 2d 417, 443 (S.D.N.Y. 2010). And courts have reinstated the IHO's opinion where the IHO's opinion took into account information that was ignored by the SRO. *M.H. v. N.Y. City Dep't of Educ.*, 712 F. Supp. 2d 125, 154-55 (S.D.N.Y. 2010), *aff'd*, *M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217 (2d Cir. N.Y. 2012) ("[T]he SRO's determination cannot be considered 'thorough and careful' because the SRO considered only [the student's] annual academic goals, whereas the IHO based her decision on both the annual academic goals and the short-term objectives.").

Regarding findings of credibility, deference is given to the IHO since the IHO is the one who listens to the witnesses; the SRO should be reversed when he makes his own findings of credibility that are different from the IHO. *M.V. v. Shenendehowa Cent. Sch. Dist.*, 2008 U.S. Dist. LEXIS 182, *11-12 (N.D.N.Y. Jan. 2, 2008) (finding the credibility determinations and reasoning of the IHO more reliable than those of the SRO); *Wolfe v. Taconic-Hills Cent. Sch. Dist.*, 167 F. Supp. 2d 530, 534 (N.D.N.Y. 2001).

Conclusions of law and mixed questions of law and fact receive pure *de novo* review. This Court need not give any weight to conclusions of law concerning the interpretation of the federal statute and its requirements. *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1121 (2d Cir. 1997) ("[T]he 'due weight' we ordinarily must give to the state administrative proceedings is not implicated with respect to that conclusion, because it concerns an issue of law."); *Lillbask v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005).

Although summary judgment motions are often the procedural vehicle by which IDEA claims are decided, the motion is really a pragmatic procedural mechanism for reviewing a state's compliance with the procedures set forth in IDEA. *Lillbask*, 397 F.3d at 83.

## LEGAL ARGUMENT

## DEFENDANT FAILED TO PROVIDE THE CHILD WITH A FREE APPROPRIATE PUBLIC EDUCATION

Pursuant to the IDEA, each school district, such as defendant, is required to provide their special needs children with a free appropriate public education. 20 U.S.C. §§ 1400(d)(1)(A); § 1412(a)(1)(A). Thus, the school district must prove that it provided the child with "special education and related services," 20 U.S.C.A. § 1401(9), that were "meaningful" and "reasonably calculated to enable the child to receive educational benefits," *Rowley*, 458 U.S. at 207; *Walczak*, 142 F.3d at 130.

A free appropriate public education "must include special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006), *cert. denied*, 552 U.S. 985 (2007); *A.E. ex rel. Mr. & Mrs. E. v. Westport Bd. of Educ.*, 251 Fed.Appx. 685, 687 (2d Cir. 2007).

An IEP must be reasonably calculated to enable the child to receive educational benefits; it must be likely to produce progress, not regression. *D.F. ex rel. N.F. v. Ramapo Cent. Sch. Dist.*, 430 F.3d 595, 598 (2d Cir. 2005); *Weixel v. Bd. of Educ.*, 287 F.3d 138, 151 (2d Cir. 2002). Consistent with the *Rowley* test, the Second Circuit has expressly rejected the concept that mere trivial advancements will suffice to satisfy the "benefit" test because a "meaningful" benefit is what is required. *Walczak,* 142 F.3d at 130; *Mrs. B.,* 103 F.3d at 1120; *see also Polk v.*

*Cent. Susquehanna Intermediate Unit 16,* 853 F.2d 171, 183 (3d Cir. 1988); *Hall v. Vance County Bd. of Educ.,* 774 F.2d 629, 636 (4th Cir. 1985).

An appropriate IEP must also procedurally satisfy the requirements of the IDEA. *Cerra.*, 427 F.3d at 192 (quoting *Rowley*, 458 U.S. at 207); *M.S.*, 231 F.3d at 102. The IDEA does not simply require substantial compliance on the part of the District; it requires compliance. *D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.*, 465 F.3d 503, 512 (2d Cir. 2006), *amended by* 480 F.3d 138 (2007).

Among other mandatory statutory requirements, the IEP must contain "appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved." *Rowley,* 458 U.S. at 182. In order to prevail under prong one, the district must present "objective evidence" that the child is likely to make progress under the proposed plan. *Cabouli v. Chappaqua Cent. Sch. Dist.*, 202 Fed.Appx. 519, 521 (2nd Cir. 2006); *Walczak*, 142 F.3d at 130.

### A The Evidence Objectively Demonstrated that the IEP Could Not Meet Kassidy's Sensory Needs

The hearing request pled that the IEP could not meet Kassidy's sensory needs.

The parent voiced disagreement at the meeting stating that the proposed program, including the related service mandates and the staffing ratio were inappropriate to appropriately, and adequately address all of Kassidy's needs." Pl. Ex. A, p. 2.

Kassidy has very specific and severe sensory needs and the mention of sensory needs on the IEP was generic. *Id.*

The program recommended does not offer adequate of appropriate instruction, support, supervision or services to meet Kassidy's unique needs in order to make educational progress. *Id.* p. 5.

The CSE meeting minutes mention Kassidy's need for brushing throughout the day and his sensitivity to loud noises. Def. Ex. 3, p. 2. Neither of these needs was included or addressed in the IEP. See Def. Ex. 1. The April 18, 2012 IEP's present levels of performance section

mentions in general terms that Kassidy has sensory needs, but the IEP did not adequately

describe those needs or provide sufficient detail to enable school staff to adequately understand

and address them. See Def. Ex. 1, pp. 1-2.

Kassidy is sensory seeking. When he goes out and becomes sensory seeking it is difficult

to bring him back into a regulated state. Tr. 480. When Kassidy is dysregulated he doesn't have

access to his academic skills and cannot process anything. Tr. 1124. When he is dysregulated he

runs and jumps and crashes. Tr. 168-69, 316, 480-81, 484-85. Although the IEP notes that

Kassidy will run around when he is dysregulated, it does not provide for the sensory diet needed

to keep him regulated. Def. Ex. 1.

A sensory diet is something that an OT creates for children where they receive additional

or less sensory input to help them maintain an adequate arousal and modulation level, which

helps the student to function throughout the day. Tr. 1020-21. When Kassidy's sensory

processing is not under control he becomes dysregulated and he is unable to be calm. Tr. 480.

During the 2012-2013 school year, Kassidy needed five to ten minutes of movement

breaks every hour. Tr. 1029. This is not on his IEP. Def. Ex. 1 p. 2. Kassidy needed therapeutic

brushing and joint compressions every one and a half to two hours. Tr. 1029, 1033. This provides

Kassidy with proprioceptive input to give him better awareness of his body. Therapeutic

brushing and joint compressions are not on his IEP. Def. Ex. 1 p. 2. Kassidy wears a weighted

vest. Tr. 1029. This is the only component of his sensory diet on his IEP, however, no specifics

of the vest are listed. Def. Ex. 1 p. 2. Kassidy needed vestibular input from specific equipment in

the sensory gym. Tr. 1029-30. This is not on his IEP. Def. Ex. 1 p. 2. At the Rebecca School his

brushing protocol was implemented by the classroom staff, which received training to do so. Tr.

1030.

The December 2011 progress report prepared by the Rebecca School notes Kassidy's sensory difficulties in numerous places, including a full page "Sensory Motor Profile." Def. Ex. 6.

> He is also typically very sensory seeking and will seek out sensory input from running, jumping on the trampoline, and crashing on the foofchair." Kassidy can become sensorily dysregulated and it is difficult for him to accept regulation from adults in the room. For example, if he is playing chase with a peer, he can become overly excited and not be able to stop running or slow down. Typically, telling Kassidy to stop, take a break, and then sitting down with him to take deep breaths and give him reminders to slow down and re-regultate. It will usually take *at least* five minutes for Kassidy to regain a state of regulation where he is available for interactions. Def. Ex. 6, p. 1.

> Kassidy also enjoys playing with a variety of sensory materials, including rice and beans, moon sand, water, and shaving cream. Def. Ex. 6, p. 5.

> Sensory motor integration refers to how a person takes information from their environment, interpret it, and respond to it. Difficulties in sensory integration and processing underlie difficulties in behavior, coordination, and completion of routine tasks. Kassidy is a child who enjoys and benefits from the sensory input he needs.

> He seeks input throughout his day and can often be found running to get to where be wants to go. In the sensory gym he enjoys climbing, swinging, jumping and crashing. While eating Kassidy shows no aversions and will touch and eat all types o f tactile mediums. Kassidy especially enjoys sensory play with rice and beans, water, and shaving cream. When Kassidy's environment gets overwhelming he will often walk away to jump on the trampoline to self-regulate. Kassidy gets vestibular input while on a swing. The vestibular sense processes information about movement, gravity, and balance that it receives through the receptors in the inner ear. When on a swing Kassidy looks for the reporting therapist to hold on to and prefers to go in a slow linear motion. Kassidy does not like to stay on the swing for long periods of time, but will return to it intermittently throughout the session. The proprioceptive sense processes information about body parts and body positions, which it receives through the receptors in the muscles, ligaments, and joints. Kassidy benefits from and seeks proprioceptive input and this input allows him to better understand where his body is in space.

> When Kassidy is running jumping, running, and crashing throughout his day, he is getting proprioceptive input he needs to understand where his body is in space. When Kassidy's environment gets overwhelming, he will walk away to the trampoline to self-regulate. Although Kassidy can remain engaged for extended period of time and rarely becomes dysregualted, he continues to need support

when he feels uncomfortable, frustrated, or upset to sit with these feelings and expand on why he is upset and what he or an adult can do to help him feel better. This is the next step to helping Kassidy feel be bas autonomy over his emotions and this will allow him to sustain regulation through a variety of environments and emotions. Def. Ex. 6, p. 6.

Kassidy receives regular sensory input throughout his day by an individual sensory diet. Utilizing DIR methodology, occupational therapists formulate individual sensory profiles and generate sensory diets to address student's sensory' needs to enhance sensory integration, self-regulation, overall organization, body awareness, attention, intention, social skills, and communication. Classroom staff is specifically trained to give Kassidy the sensory input he needs on a schedule to be more successful in the classroom environment. Kassidy wears a compression vest 30 minutes on and 30 minutes off throughout the day, which provides deep pressure and proprioceptive input.  The vest helps increase body awareness and improves Kassidy's ability to attend classes throughout the day. Def. Ex. 6, p. 6.

Kassidy participates in a cool down sensory group with peers in his class four afternoons per week. During such sessions, lights are turned off, yoga music is playing, and each child receives brushing and joint compressions. Def. Ex. 6, p. 6.

Kassidy participates in the (Pre-) Astronaut Training group as part of his weekly program. This program, which occurs with peers in small groups led by the reporting therapist, follows a sequence of self-generated movements that provide essential sensory input to enhance Kassidy's ability to remain organized and focused, and reinforces crucial motor and developmental milestones. Pictures of Kassidy and his classmates performing each movement are used as a visual reference for the group. Movements and counting are said aloud, and the group follows the sequence. As a result, Kassidy receives a sensory learning experience. Def. Ex. 6, p. 7.

The meeting minutes that were taken at the CSE meeting reflect a discussion of Kassidy's

sensory needs. Specifically, the minutes notes, "Under "Sensory, very sensory seeking, brushing

throughout the day, sensitive to loud noises." Def. Ex. 3, p. 2. The minutes also note, "Social

Worker feels he should have a sensory environment and access to sensory tools and materials."

*Id.* p. 4.

Kassidy's sensory needs were described as follows on the IEP:

Kassidy is generally calm regulated throughout the school day. He is very sensory seeking and will seek out sensory input from running, jumping on a trampoline and crashing on a foof chair. He navigates the school environment safely unless

11

visually distracted by a motivating object such as a toy or book. In those instances, he may walk into people or walls around him. Kassidy wears a compression vest 30 minutes on and 30 minutes off throughout the day, to help increase body awareness and improve his ability to attend to classroom tasks throughout the day. Def. Ex. 1 p. 2.

The IEP also noted sensory concerns by the parent.

Kasidy can become up-regulated when playing fast paced games such as chase. When this happens, he will run around very quickly and it is difficult to get him to slow down. He is usually able to re-regulate with adult support. According to his Occupational Therapist, he needs to work on sensory integration, fine and gross motor kills, body awareness, visual spatial thinking. He needs to improve the efficiency in the use of his eyes and vision integrated with the rest of his senses and overall movement. . Def. Ex. 1 p. 2.

Kassidy's management needs only list his classroom 6:1:1 program and related services.

Def. Ex. 1, p. 2.

There are numerous aspects of Kassidy's sensory diet and needs that were in the Rebecca School report, discussed at the meeting, or were part of his program at the Rebecca School and that are not mentioned on the April 18, 2012 IEP. Brushing (Def. Ex. 3, p. 2; Tr. 10-29-30; Def. Ex. 6, p. 6), noise sensitivity (Def. Ex. 3, p. 2; Tr. 272), the use of sensory materials, including rice and beans, moon sand, water, and shaving cream (Def. Ex. 6, p. 5), movement breaks (Tr. 1029),[2] cool down sensory group (Def. Ex. 6, p. 7), astronaut training (Def. Ex. 6, p. 7), vestibular input (Tr. 1029-30; Def. Ex. 6, p. 6). See Def. Ex. 1.

The CSE had the December report, which provided details of Kassidy's sensory needs. Def. Ex. 6. The CSE discussed his sensory needs. Def. Ex. 3. Yet the critical details of Kassidy's sensory diet did not make it into the IEP.

When an IEP sets forth educational needs or goals, yet provides no means of achieving those goals, the IEP is not appropriate and denies the child educational benefit. *D.N. and J.V.N.*

---

[2] Although the IEP mentions breaks as a strategy when Kassidy becomes dysregulated, it does not state that he needs movement breaks to stay regulated. Def. Ex. 1, pp. 1, 3.

*v. Board of Education of Center Moriches Union Free School District*, 2015 U.S. Dist. LEXIS

138272, 25 (September 28, 2015)

> Even though the IHO and Second SRO found that the goals and objectives
> provided D.N. a FAPE, Second SRO 10; IHO 149, this conclusion misses the
> point: accomplishing D.N.'s goals and social needs were simply impossible under
> the plan set forth. Therefore, as drafted, the recommended 1:1:1 placement was
> not reasonably calculated to enable to D.N. to receive educational benefits, and
> D.N. was denied a FAPE. *Id.* at 37.

Here the IEP had one goal that related to sensory regulation. "Kassidy will improve his

ability to use sensory information to understand and effectively interact with people and objects

in school and home environments." Def. Ex. 1, p. 6. However the IEP did not give him the

sensory diet needed for Kassidy to improve his ability to use sensory information. Moreover,

none of the goals could have been met without a sensory diet because Kassidy is unable to learn

when dysregulated. Tr. 168-69, 316, 480-81, 484-85.

The IHO failed to discuss Kassidy's sensory needs at all. IHO Decision pp. 11-16. The

SRO did discuss the student's sensory needs at length and does note many of the absences on the

IEP. SRO Decision pp. 10-15. However, the SRO's conclusion that it did not deny Kassidy a

FAPE is patently against the weight of the evidence. "Under the circumstances, the April 2012

CSE's failure to include or adopt specific language in the IEP or to include techniques and

strategies to address the student's management needs within particular sections of the IEP did not

constitute a failure to offer the student a FAPE." SRO Decision, p. 15. Although the SRO is

entitled to deference, the court is not a rubber stamp for the administrative findings. *Rowley,* 458

U.S. at 207. Here the court may reject the factual findings because they are contradicted by the

record. *Schreiber*, 700 F. Supp. 2d 529, 547. Without a sensory diet Kassidy becomes

dysregulated and doesn't have access to his academic skills and cannot process anything and just

he runs and jumps and crashes. Tr. 168-69, 316, 480-81, 484-8, 1124. The SRO's conclusion that Kassidy could learn without a specific sensory diet is factually incorrect.

The evidence overwhelmingly demonstrated that Kassidy needed a very specific sensory diet and the IEP failed to include critical pieces of that sensory diet. Without that diet Kassidy would be unable to learn. Therefore, the IEP as written denied him a FAPE.

### B. The Department Failed to Demonstrate the Proposed Placement Could Meet Kassidy's Sensory Needs as Stated on his IEP

"School districts bear the burden of proving that an offered placement was appropriate." *B.P. v. N.Y. City Dep't of Educ.*, 2015 U.S. App. LEXIS 22892 (2d Cir. N.Y. Dec. 30, 2015). Thus, the DOE had the burden to prove that the proposed placement could implement the IEP. "Challenges to proposed placements can 'trigger a duty on the part of the school district to provide evidence regarding [the placement school's] adequacy.'" *Id.* quoting, *M.O. v. N.Y. City Dep't of Educ.*, 793 F.3d 236, 245 (2d Cir. N.Y. 2015).

The hearing request pled in the following places that the proposed placement could not meet Kassidy's sensory needs.

> There is no sensory gym in the school-no area designated for sensory breaks or for sensory activities, which Kassidy requires. Pl. Ex. A, p. 6.

> There was no sensory program in place and no qualified person to address Kassidy's sensory needs. The parent was concerned as Mr. Morales did not understand the term "sensory diet" despite the fact that the placement had a population of autistic children. *Id.*

> The school lunchroom was loud and rowdy… This is both dangerous and inappropriate for Kassidy who needs a small, structured, and quiet environment. *Id.*

> Upon information and belief, the proposed placement cannot implement the IEP including but not limited to the goals, the academic management needs, the social/emotional management needs, or behavior needs. *Id.*

14

The parent alleged both generally and specifically that P010X @ P304X could not meet Kassidy's sensory needs.

Barbara Hanson, principal at P010X @ P304X testified for the district. She testified minimally about the school's ability to meet Kassidy's sensory needs as documented by the IEP. Her testimony with regard to the school's sensory program was vague and did not address whether the school could meet Kassidy's very specific sensory needs.

Q: And does the school provide sensory services for students?

A: Sure Yes.

Q: And does the school possess sensory equipment?

A: Yes we do. Tr. 65-66.

Q: Did the school have programs and systems in place to address the student's sensory needs?

A: Sure. Tr. 73.

Although Ms. Hanson described the school's Get Ready to Learn Program, a program to address regulation, she did not describe whether the program was appropriate for Kassidy or if the school could meet Kassidy's sensory needs. Tr. 73-74.

When asked what a sensory diet is, Ms. Hanson, stated, "Sensory diet is something that is done for a student depending upon their sensory needs. Every child, you know, has a different need but whatever that need is, that's what they are given." Tr. 65.

To the extent that the IEP mentioned Kassidy's sensory needs, it was not demonstrated that P010X @ P304X could implement the IEP. It wasn't even clear that Ms. Hanson knew what a sensory diet was.

The parent testified that when they visited P010X @ P304X they asked if the school could implement a sensory diet, and they were told, "No, lunch is downstairs." Tr. 293. When asked why she felt the school was not appropriate the parent said:

> The fact that the person giving the tour had no idea what a sensory diet was, the fact that the person giving the tour didn't know too much about a sensory gym or know what kind of techniques that they would use in terms of therapy and she gave me a tour. Tr. 302.

The IEP recommended, a trampoline, foof chair, compression vest, proprioceptive input, adaptive physical education, work on sensory integration. There was no testimony that P010X @ P304X had any of this equipment.

It is not speculative for a court to find that a placement school is not appropriate when it does not have the capability of meeting a child's sensory needs. *B.R. v. N.Y. City Dep't of Educ.*, 910 F. Supp. 2d 670 (S.D.N.Y. Dec. 26, 2012), cited with approval in *M.O. v. N.Y. City Dep't of Educ.*, 793 F.3d 236, 244 (2d Cir. 2015). The court in *B.R.* held that a proposed school was not appropriate because it lacked the capacity to implement 1:1 OT, which was necessary due to the child's sensory needs.

Neither the IHO not the SRO conducted any analysis with regard to whether P010X @ P304X could implement the sensory supports listed on the IEP. IHO Decision, p. 16; SRO Decision pp. 22-24. Both the IHO and SRO found such claims speculative. *Id.* Having done no analysis, the IHO and SRO are not entitled to deference. The defendant failed to meet its burden that P010X @ P304X could meet Kassidy's sensory needs as laid out in his IEP. There was scant testimony by Ms. Hanson that P010X @ P304X could meet Kassidy's needs. It lacks any specificity and does not address numerous aspects of Kassidy's sensory diet. Therefore the district did not demonstrate whether P010X @ P304X could meet Kassidy's sensory needs as laid out in his IEP.

16

For all of the foregoing reasons, it is submitted that the district did not meet its burden of proof that it provided the child with a free appropriate public education.

<u>**CONCLUSION**</u>

Defendant has failed to meet its burden of proof that it provided Kassidy E. a free appropriate public education for the 2012-2013 school year.

Therefore, plaintiffs should be granted summary judgment, the State Review Officer's decision should be reversed, the court should remand to the Impartial Hearing Officer to determine whether the Rebecca School was appropriate for the child and whether equities support relief.

Respectfully submitted,

_____/s_____
LAWRENCE D. WEINBERG (LW7841)
Attorney for Plaintiffs

lawrenceweinberg@gmail.com

Date: February 8, 2016

17